## TWENTY-ONE MINING CO. v. ORIGINAL SIXTEEN TO ONE MINE.

(Circuit Court of Appeals, Ninth Circuit. May 17, 1920.)

No. 3401.

**Mines and minerals ☞31 (1)—Owner of extralateral vein can excavate necessary shafts and openings in country rock.**

The right to possession and enjoyment of a vein outside the boundaries of the claim on which it apexed, given by Rev. St. § 2322 (Comp. St. § 4618), involves the right to excavate necessary workings in the country rock, where the vein is so crooked or so narrow that it cannot be economically worked within its own confines, so that the owner of the surface under which the vein dips cannot restrain the excavation of such shafts, and of stations, ore pockets, and chutes necessary to the working of the vein.

Appeal from the District Court of the United States for the Second Division of the Northern District of California; William C. Van Fleet and Frank H. Rudkin, Judges.

Suit in equity by the Twenty-One Mining Company against Original Sixteen to One Mine. Decree for defendant, and plaintiff appeals. Affirmed.

See, also, 260 Fed. 724, —— C. C. A. ——, and 265 Fed. (C. C. A.) 469.

Suit in equity by the Twenty-One Mining Company for an injunction restraining the Original Sixteen to One Mine from entering into or upon any part or portion of plaintiff's claims outside the limits or boundaries of a certain vein apexing in defendant's claim, and which it is pursuing extralaterally under the surface of plaintiff's claims, and from taking out, excavating, or removing any of the quartz or earth therein outside said limits or boundaries of said vein underneath the surface of plaintiff's claims.

John B. Clayberg, Frank R. Wehe, and Bert Schlesinger, all of San Francisco, Cal., for appellant.

Wm. E. Colby, John S. Partridge and Grant H. Smith, all of San Francisco, Cal., and Carroll Searls, of Nevada City, Cal., for appellee.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Before GILBERT and MORROW, Circuit Judges, and WOL-VERTON, District Judge.

MORROW, Circuit Judge. The appellant was plaintiff and the appellee was defendant in the court below, and they will be so designated in this opinion.

In the amended complaint, plaintiff alleges that it is the owner of the Valentine and Belmont quartz lode mining claims, located in Sierra county, Cal.; that within the surface boundaries of said claims dropped downward perpendicularly there exists a valuable vein of quartz, rock, and earth in place, containing valuable minerals; that the plaintiff heretofore claimed said vein, but the District Court for the Northern District of California had rendered a decree in which it was determined that the apex of said vein was located within the surface boundary of defendant's mining location and claim, and that said vein belonged to the defendant; that by and under such decree the said defendant claimed the right to work and mine the said vein at any and all points beneath the surface of said Belmont and Valentine quartz lode mining claims and threatened to and would commence the work of extracting and removing the ores from said vein; that said defendant, in the working and mining of said vein, would excavate and remove rock and earth therefrom and create large and extensive openings underneath the surface thereof entirely outside the limits and boundaries of said vein; that the defendant in its said work outside the limits and boundaries of said vein would commit great and irreparable injury and damage to plaintiff's claims. Plaintiff applied to the court for an injunction restraining the defendant from entering into or upon any part or portion of plaintiff's claims outside the limits and boundaries of the extralateral vein.

Defendant in its answer admitted that under and by virtue of the decree mentioned in the complaint the defendant claimed the right to work and mine the vein apexing within its own claim, and which in its downward course dips under plaintiff's claims, but alleged in the mining of said vein beneath the surface of plaintiff's claim it would keep strictly within the rights granted to it by the mining statute, which permits it to pursue said vein extralaterally, and that in the mining of said vein it had not heretofore and would not in any respect exceed the rights granted to it by said statute and conferred by said decree.

Upon the final hearing a decree was entered dismissing the bill of complaint. This is the second appeal to this court in this case. The former appeal involved the question whether, in mining the Sixteen to One vein extralaterally underneath the surface of plaintiff's claims, the defendant was confined to work entirely within the walls of its vein, or whether it had the right to cut into the country rock on either side of the vein, when necessary for its mining operations, either to keep its workings straight or regular as customary in such operations when the vein undulates or changes in direction, or when the vein narrows down to a width less than the convenient and ordinary width of the usual mining operations; plaintiff's contention be-

ing that the right of defendant was confined entirely within the walls of the vein, and that these walls could not be transgressed, no matter how narrow the space.

The court held that under section 2322 of the Revised Statutes (Comp. St. § 4618), giving the owner of a mining claim the "exclusive right of possession and enjoyment of all * * * veins * * * throughout their entire depth" which apexed in his claim, in following such vein beyond the side line, he is not confined to the vein itself, but may extend his workings beyond its walls, if necessary for a proper and economical working of the vein. Twenty-One Mining Co. v. Original Sixteen to One Mine, Inc., 255 Fed. 658, 167 C. C. A. 34. In the present appeal the question is whether the workings of the defendant along this extralateral vein under the surface of plaintiff's claims are in excess of the reasonable necessities of good mining methods and result in an exploration of plaintiff's ground outside of the vein. The application for the injunction upon the final hearing was heard upon affidavits. We think these affidavits clearly establish the following facts:

That the vein here involved varies in width and is undulating and waving, with many rolls, curvatures, and variations, and in places it is irregular, faulted, and broken; that the shaft is under the foot wall of the vein, in country rock of a more uniform composition than the vein itself; that by having the shaft in the footwall and immediately under the vein the ore and waste rock can be run by gravity into the skips which are operated in the shaft; and that this method of following the vein is in accordance with the approved and most economic method of handling ore and waste rock.

But, in addition to the fact that defendant departs from the vein to the limited extent mentioned, plaintiff now complains that the defendant has made excavations for stations, ore pockets, and chutes connecting with defendant's shaft. The evidence shows that it is essential that these workings be excavated in the walls of the vein, and of necessity there must be allowance for reasonable connections between the shaft and the vein; otherwise, the shaft would be worthless, and the work would have to be abandoned. It appears further from the evidence that the country rock encountered in the excavations was entirely barren and worthless, and its removal occasioned the plaintiff no actual damage or detriment whatsoever. In the former appeal we said:

"The defendant has run and is running its main working shaft in as nearly a straight line as possible, and in so doing it does not follow the undulations, curvatures, and faults of the vein." 255 Fed. 658, 659, 167 C. C. A. 34, 35.

Referring to the statute we said:

"To give this statute any practical effect, we must accord to the word 'enjoyment' a practical meaning. The exclusive right of enjoyment of a vein, to be of any value, must include the right to mine and extract the mineral contained in it. To say that one has the exclusive right of possession and enjoyment of a valuable vein throughout its entire depth, but that he cannot extract the mineral therefrom, because it is too narrow, or in places becomes too

narrow, to permit of mining operations within its walls, is to say that, when Congress used the words 'all veins,' it meant only 'all wide and straight veins.'"

This, of course, was not the meaning of Congress.

In Lindley on Mines (3d Ed.) § 568, the author says:

"The right to follow the vein into adjoining lands frequently cannot be exercised without disturbing some portion of the inclosing rock. The grant of the vein carries with it whatever is reasonably required for its enjoyment, and without which the grant would be ineffectual."

In section 812 the author says further:

"The underlying principles involved may be thus expressed: The proprietor of the minerals has a right to win them. In exercising this right all privileges reasonably necessary for its full and fair enjoyment are necessarily implied; but these privileges must be exercised with due care and in a lawful manner, so as not to wantonly or unnecessarily interfere with the rights of the surface owner."

The plaintiff contends that the Supreme Court passed upon this question in St. Louis Mining Co. v. Montana Co., 194 U. S. 235, 24 Sup. Ct. 654, 48 L. Ed. 953, and determined that the owner of the extralateral vein had not the right claimed by the defendant in this case to disturb the subsurface of the adjoining claim into which the extralateral vein penetrated on its downward course, in order that it might more economically reach and work the vein which it owns. In that case Judge Brewer, speaking for the court, compared the significant lines in controversy with those of a right-angled triangle; the vein descending on its dip being the hypothenuse or base line, and the boundary between the two claims the side lines, of the triangle. The court held that the owner of the extralateral vein had the "right to the hypothenuse of the triangle," but not the right to "occupy and use the base line." The base in that case was a straight tunnel, which did not start on the apex of the vein, and did not follow the vein in its downward course. It commenced 260 feet underground, and projected horizontally from the St. Louis claim into the Nine Hour claim, for the purpose of reaching the extralateral vein on its descent through the latter.

That is not this case. Here the defendant is not driving a tunnel through plaintiff's ground along a "base line" to reach its vein at some calculated depth and along its course to explore the ground for other veins, but it is following its vein from the apex on the surface downward on its course, a right given by the statute, and which the evidence shows it is exercising in good faith and in a reasonable and workmanlike manner. We think the court was right in dismissing the bill of complaint.

The decree of the court below is affirmed.